**STRICKLAND TRANSPORTATION COMPANY, Inc., a Corporation, Plaintiff-Respondent,**

v.

**HARWOOD TRUCKING, INC., a Corporation, Defendant-Appellant.**

No. 30480.

St. Louis Court of Appeals.

Missouri.

July 18, 1961.

George F. Gunn, Jr., and LaTourette & Rebman, St. Louis, for appellant.

T. Jackson Case and Case, Voyles & Case, St. Louis, for respondent.

ANDERSON, Presiding Judge.

This is an action brought by plaintiff, Strickland Transportation Company, Inc., against Harwood Trucking, Inc. Both parties are common carriers by motor vehicle. The object of the suit was a recovery by plaintiff of the amount it had been compelled, as the delivering carrier of an interstate shipment, to pay to the owner of the goods shipped for failure to deliver a portion thereof. Defendant was the initial carrier and had delivered the freight to plaintiff. The case was heard by the trial court without a jury. There was a finding and judgment for plaintiff. Defendant has appealed.

On January 28, 1953, appellant issued its uniform straight bill of lading by which it acknowledged receipt of 833 cartons of food choppers known as "salad masters" from Kitchen-Quip, Inc., at Waterloo, Indiana. By this bill of lading, appellant undertook to transport the shipment to Saladmaster Sales Company, Inc., at Dallas, Texas, the route of the movement being specified via appellant's line to St. Louis, Missouri, then by respondent's line to destination.

The bill of lading did not contain the notation "shippers load and count."

The goods in question were package freight and were loaded onto defendant's trailer by the consignor at its place of business in Waterloo, Indiana. Defendant's driver did not help load or count the goods, and after the truck was loaded, drove to St. Louis and put the trailer on Harwood's lot.

Respondent took the shipment from St. Louis to Dallas. After the goods were delivered, the consignee made claim that the shipment was 33 cartons short. Thereafter the consignee brought suit, in Texas, against respondent on account of this shortage. The suit was tried and resulted in a verdict and judgment against respondent in the sum of $1,440 plus interest and costs.

This judgment was paid by respondent on December 9, 1954, the total amount so paid being $1,631.80.

After the Texas suit was filed respondent referred the matter to its general counsel, Ralph W. Currie. Mr. Currie then contacted by telephone appellant's Traffic Manager, G. D. Holladay, and discussed the case with him. At that time Mr. Currie had befor him a letter written by Mr. Holladay to E. F. Moffitt, Freight Claim Agent for Strickland Transportation Company, Inc., dated May 20, 1953. This letter, which was introduced in evidence by respondent, stated that appellant felt there was no liability for the alleged shortage and that it was disallowing the claim.

Mr. Currie testified that after reviewing the file he formed the opinion that, although the bill of lading called for 833 cartons, the probabilities were that only 803 cartons had been loaded. He further testified:

"* * * so I called to Harwood Trucking Company on the phone and got ahold of the traffic manager, Mr. Holladay who had written this letter and who had written other letters in the file in front of me, and we discussed this situation with this letter, and he told me in the course of the conversation, that the driver counted, * * * twenty-six skids stacked outside of a building that were empty. One skid was left partially loaded setting on the ground with about seven boxes. And he told me that he wasn't quite clear just how he was going to prove this from that letter that there was eight hundred and three cartons delivered and he said, well, this is what our investigation showed, and our driver says that each one of these skids carried thirty cartons on it. The driver counted twenty-six empty skids which multiplied by thirty is seven hundred and eighty. Then he said, now, on the twenty-seventh skid, there was seven boxes still left on the skid after the skid was loaded, so if you take seven off of thirty,

that leaves twenty-three, and add twenty-three to seven hundred and eighty, that is eight hundred and three, and that is all we ever got, and I said, that is all we delivered, and he said, of course, that is all you delivered. That is all you ever got in the first place, so I said to him, well, then it appears to me we have a defense against this matter and he said, yes; well, I said, well, how will we, what to do about it, and he said, when the time comes with the trial of this case, I will send you the witnesses down there to testify, that we only got eight hundred and three cases, and, of course, we only delivered to you what we got and that was only eight hundred and three cases."

There was also introduced in evidence a letter from Holladay to Moffitt, dated June 30, 1953. The last paragraph of said letter is as follows:

"In reply to your inquiry, if and when suit is filed, it will not be necessary for you to defend for the account of Harwood Trucking, Inc., as we will appear in our own defense. I assume your company will do likewise since this is a joint lineshipment."

Mr. Currie testified that he called the above paragraph of the letter to the attention of Mr. Holladay, and the latter said, "* * * we will furnish you the witnesses."

Mr. Currie further testified that after the date for the trial was selected he again told Mr. Holladay that witnesses were needed to prove that Harwood did not get the merchandise and Holladay said:

"* * * we have talked it over, and we have decided that it would just cost us more money to send the witnesses down there, and rather than do that, we would just rather pay you thirty-one percent of the loss * * *."

Currie testified he replied:

"* * * that isn't what you agreed to do. We can't win this lawsuit

against this plaintiff with a bill of lading out against us, unless you produce these witnesses, because the shortage, if it occurred, is up there. You have already told us you didn't give us but eight hundred and three and that is how many we delivered so the shortage is on you. * * * He said, well, do the best you can, because we are just not going to incur the expense. It is cheaper on us just to pay thirty-one percent of the revenue our pro rate of the judgment if you lose, and I said, well, now, I am not going to absorb that loss. You are due us under the statute the loss; if there was a shortage it occurred on your line, and we have to pay it, we are entitled to get one hundred percent back from you, not just thirty-one percent, and he said, well, that is all I can do about it."

Mr. Currie stated that respondent had very little to offer in defense to the action. Plaintiff therein brought two witnesses from Waterloo, Indiana, to testify they loaded 833 cartons and defendant did not have the witnesses to testify that Harwood got only 803. He stated he did not have time to take depositions of these witnesses after Holladay told him they would not be sent. After this judgment there was a demand on Harwood by Respondent for reimbursement.

Patrick Henry Stumpe, Harwood's truck driver, testified on behalf of appellant. He stated that he recalled going to Kitchen-Quip Co. to pick up the merchandise in question; that he did not help load the goods on the trailer, but sat in his cab; that the goods were in pasteboard boxes and were unloaded on to the floor from skids; that when they were loaded he pulled out, shut the doors and was "pretty sure that I put a seal on it"; that he then got in his truck and drove to St. Louis; that he did not stop at any time to load or unload any part of the trailer; that he did not open the doors at any time on the trip to St. Louis; that when he got to St. Louis he put the trailer on Harwood's lot and at that time the trailer was in the same condition as it was when he left Waterloo.

On cross-examination Stumpe testified that he signed the bill of lading; that he was not positive he put a seal on the trailer, but thought he did; that it took one hour and a half to load the trailer; that he did not count the packages; that all he did was to sign the bill of lading, which he did not read, but was told there were 833 packages loaded.

When asked by the Court what made him think he sealed the trailer, Stumpe replied: "Well, I am pretty much in the habit of putting seals on them. * * * I carry seals with me and I generally always put one on them."

On recross-examination he testified that after the trailer was loaded he inquired, " * * * if that was all that went on the trailer, and he set right there and he figured and figured and figured and he said thirty-three more cartons to go on, and then he kept figuring and pretty soon, he said, no, it was all on there, so I pulled it out and shut the door."

The witness further testified that after the shipment was loaded he counted the empty skids. He stated:

"That's been quite a while back, but the way I counted out the skids, there was one short. * * * If I ain't mistaken, it (the count) was twenty-six. * * * The empty skids after they loaded into the truck. * * * They pile them all up in a stack there and I counted up the skids."

Stumpe's testimony thereafter becomes confusing for he states:

"The way I figured there was one short. * * * I figured that there is thirty-three on a skid, and the way I counted it, there was one skid short. * * * Twenty-six skids with thirty-three on a skid. * * * I thought maybe they could have had more than thirty-three on a skid. * * * Some-

"times they will put so many on one and more on others."

The Court: "Just counting the skids and unless there was an overloading, why, you were thirty-three short?"

The Witness: "That is right."

Appellant contends that there is no evidence in the record to indicate that respondent received from appellant other than 833 cartons of merchandise, as noted in the bill of lading, and consequently no showing that 30 cartons of this shipment were lost while being transported over the lines of the defendant. For that reason it is urged that the trial court erred in finding in favor of respondent.

The burden of proof was, of course, upon the respondent to prove that the loss, damage or injury was caused by the appellant. In order to meet this burden respondent offered certain admissions made by appellant through its Traffic Manager, Mr. Holladay. We refer to the testimony of Mr. Currie, who testified that Holladay, when contacted by phone after the Texas suit was brought, stated that appellant's investigation showed there were only 803 cartons loaded on to its trailer at Waterloo, Indiana, and only 803 delivered to respondent, and he, Holladay, stated he would supply the necessary witnesses to prove those facts when the matter should come on for trial in Texas. This evidence was convincing, and sufficient, in our judgment, to support a finding that the appellant was the one at fault in negligently issuing a bill of lading for 833 cartons of merchandise when, in fact, only 803 cartons comprised the shipment. Under the facts, it is our opinion that respondent was entitled to indemnity for the amount it was forced to pay the consignee for the damage sustained by consignee.

Appellant's next assignment of error is that the trial court erred in finding that respondent was entitled to $500 as a reasonable attorney's fee for the defense of the Texas lawsuit. In support of this assignment it is urged (1) that respondent was not entitled to any recovery of that nature and, (2) there was no evidence from which a determination of a fee could be made. In our opinion, respondent was entitled to recover an attorney's fee under Title 49, Sec. 20(12) U.S.C.A., since it was an expense reasonably incurred by it in defending the action brought by the owner of the property. Whether or not there was evidence from which the amount recoverable and its reasonableness could be determined involves a review of the evidence.

When the suit was filed the matter was referred to respondent's attorney, Ralph W. Currie. Mr. Currie reviewed the file and conferred with Mr. Holladay, appellant's Traffic Manager, on several occasions. He filed an answer to the petition and argued in support of a motion to strike two items from the petition, namely, attorney's fees and freight charges paid. Both items were stricken out by the Court. Plaintiff thereafter filed an amended petition in which it sued only for the value of the loss. Plaintiff then filed a motion for summary judgment and Currie opposed this by argument. The case was thereafter tried before a jury, and, thereafter, Currie filed a motion for a new trial. Currie testified that $500 was a reasonable fee for the work he performed and that his client probably paid him an amount in excess of said sum. On cross-examination he stated that his best judgment was that he received a fee in excess of $500. He also testified that he did not have the record of the number of hours he spent on the case, since the work was done in 1953, and he did not keep records that long. Appellant made no specific complaint of the allowance of an attorney's fee or of its excessiveness in its motion for new trial. In our judgment the allowance was reasonable and proper.

The judgment appealed from is affirmed.

WOLFE, J., and SAM C. BLAIR, Special Judge, concur.

RUDDY, J., not participating.